**NEW YORK, NEW HAVEN AND HART-FORD RAILROAD COMPANY,**
Plaintiff, Appellant,

v.

**UNITED STATES of America,**
Defendant, Appellee.

No. 5530.

United States Court of Appeals
First Circuit.

Nov. 30, 1959.

William Q. Keenan, New Haven, Conn., for appellant.

Norman A. Hubley, Asst. U. S. Atty., Boston, Mass., with whom Anthony Julian, U. S. Atty., and Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, HARTIGAN, Circuit Judge, and FORD, District Judge.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts entered April 13, 1959 dismissing plaintiff-appellant's complaint after a trial before the court without jury.

The New York, New Haven and Hartford Railroad (hereinafter called the railroad), a common carrier by rail in interstate commerce and subject to the jurisdiction of the Interstate Commerce Commission, sued the United States of America under the Tucker Act, 28 U.S. C.A. § 1346(a)(2) for $3,710.20 [1] as lawfully assessable charges for transportation services performed by the railroad for the Government. The Government by answer denied that $3,710.20 was due the railroad and stated that plaintiff was allowed the full amount by means of a check for $3,313.09 and credits for the remaining $397.11 to overpayments made by the Government in the payment of freight charges in plaintiff's prior bills as authorized by Section 322 of the Transportation Act of 1940, 54 Stat. 898, 955, 49 U.S.C.A. § 66.[2] Plaintiff, in a pleading denominated "Plaintiff's Reply to Defendant's Counterclaim", admitted receipt of the $3,313.09 check and called on the Government to prove the other allegations of the "counterclaim."

At the trial plaintiff-railroad put in evidence requests for admissions and interrogatories addressed to the Government and the Government's replies. The Government admitted the satisfactory performance of the services for which the charges totalled $3,710.20 and the correctness of the total charges. In answer to the interrogatories the Government stated it paid $3,313.09 by check. Plaintiff introduced no other evidence. The Government introduced into evidence the balance of the interrogatories and answers, the original of plaintiff's freight bill F-258312 for $3,710.30, the bills of lading contracts covered by it, and four General Accounting Office Forms T-73. Each T-73 Form recited the number of an earlier freight bill submitted by plaintiff to the Government, the date of payment of the earlier bill, and an "amount of indebtedness." The form requested the Finance Office of the Army to collect the amount by deduction from a bill of the plaintiff.

A General Accounting Office employee testified that the language of each form

---

1. The original documents showed $3,710.-30 as the total charges, and it was agreed by the parties at the trial the additional $.10 was also involved in the dispute.

2. "Payment for transportation of the United States mail and of persons or property for or on behalf of the United States by any common carrier subject to the Interstate Commerce Act, as amended, or the Civil Aeronautics Act of 1938, shall be made upon presentation of bills therefor, prior to audit or settlement by the General Accounting Office, but the right is reserved to the United States Government to deduct the amount of any overpayment to any such carrier from any amount subsequently found to be due such carrier."

indicated that the amount was an overpayment of an earlier bill, and that the four overpayments indicated in the forms were the basis of the deduction of $397.21. Following this testimony the Government rested its case. The district judge in his opinion stated "Since the plaintiff has introduced no evidence whatever as to the lawfulness and correctness of those earlier bills which the government alleged to represent overcharges, I must enter judgment for the defendant."

The question on appeal is the correctness of the judgment for defendant in this state of the record. This question is closely related to the issue before the Supreme Court in United States v. N. Y., N. H. & H. R. Co., 1957, 355 U.S. 253, 78 S.Ct. 212, 2 L.Ed.2d 247 (hereinafter called the New Haven case) and the principles set forth in that case govern our decision. In the New Haven case the Supreme Court held that in a suit where the dispute was over the deductions made by the Government under § 322 the burden of proof as to the correctness of the carrier's charges in prior bills is on the railroad.

■ The primary contention of the railroad in this appeal is that the Government has made a counterclaim against the railroad, and the record contains insufficient evidence on which to grant relief on the counterclaim. But this same characterization was attempted in the New Haven case and was rejected by the Supreme Court which said: "The true dispute between the parties arising from the determination and collection of the overpayments as authorized by § 322, involves the lawfulness of the [prior] bills. It is the substance, not the form, which should be our concern." Id. 355 U.S. at page 263, 78 S.Ct. at page 218. The railroad in the instant case has not met the burden of proof necessary to prevail and it avails the railroad nothing to label the Government's answer of payment by deduction a "counterclaim".

■ The railroad's contention that the issue is one of the burden of going forward with evidence and that the Government as a claimant has not met this burden, is answered by the correct view of the dispute under which the railroad, not the Government, is the claimant. Rejection of the railroad's contention is also dictated on the general principle of the New Haven case that "the burden of the carrier to establish the lawfulness of its charges is the same under § 322 as it was under the superseded practice." Id., 355 U.S. at page 262, 78 S.Ct. at page 218. Under the prior practice the carrier had the initial burden of going forward with evidence on the claim of money due for services rendered. Applying the rule of the New Haven case, the burden of going forward with evidence remains on the railroad.

■ The railroad further contends that the decision below is erroneous since it rests on an administrative determination of overpayment, and the General Accounting Office does not comply with the requirements of the Administrative Procedure Act, 60 Stat. 237, 5 U.S.C.A. § 1001 et seq., for adjudicative agencies. However, this contention of the railroad misconstrues the opinion of the court below, which did not rest its decision on the administrative determination, but rather on the defect in the railroad's presentation of its claim. In addition this argument would seem to misconstrue the part played by the G.A.O. in the present situation. Under the practice prior to the enactment of § 322 the refusal by G.A.O. to approve a bill was not an adjudication with any effect in a court proceeding. It was merely the refusal of the Government to concede the correctness of a claim against it. As such it put the railroad to its proof of the correctness of its claim. In the context of present practice, the same refusal cannot be regarded as an adjudication; it is still one party's refusal to pay as billed.

■ The railroad also contends that there is no evidence in the record which shows that § 322 is involved in the case, and that it is necessary for the Government to put in such evidence before the

court can properly rely on § 322 as the basis for judgment for the defendant. Since the railroad's bill for $3,710.30 is admittedly correct, and the remedy afforded the Government by § 322 is perhaps extraordinary, there is some plausibility to this latter contention. The elements of § 322 which are essential to its use are: (1) payment by the Government prior to audit of the bills (2) of a common carrier subject to the Interstate Commerce Act for transportation service rendered for the United States, and (3) an amount found subsequently to be due such carrier. But in line with the principles of the New Haven case that the burden on the Government under the present practice should not be greater than it was prior to the enactment of § 322, the correct conclusion would seem to be that the Government should not have to prove these elements unless the plaintiff-carrier comes forward with evidence disputing the applicability of § 322. In any event, in the instant case the railroad admitted that it is subject to the Interstate Commerce Commission's jurisdiction; the correctness of the amount of the later bill presented by the railroad was conceded by the Government; and the Government's records of the deduction show that the payment of the earlier bills was prior to the audit by the G.A.O., therefore, § 322 was shown to be applicable in this case.

■■ On oral argument the appellant-railroad raised the issue of notification of the contracts as to which the Government claimed an overpayment had been made. However, the evidence of the Government indicated which contracts it viewed as involving the overpayments and constituted notification to the railroad. Additionally, it would seem that appellant-railroad did not raise the point earlier in the litigation when the railroad had available the pre-trial procedures for obtaining this information if it were hampered in the preparation of its case. Appellant should not be allowed to rely on this ground now.

A judgment will be entered affirming the judgment of the district court.